# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO.  1:16-CV-337-GCM-DCK

| | | |
|---|---|---|
| ROGER DALE MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 6) and "Defendant's Motion For Summary Judgment" (Document No. 13).  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B).  After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>;  that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.    BACKGROUND

Plaintiff Roger Dale Morrison ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits.  (Document No. 1). On or about August 9, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning August 3, 2012.  (Transcript of the Record of Proceedings ("Tr.") 19, 208).  The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about November 8, 2012, and again after

reconsideration on March 8, 2013. (Tr. 19, 116, 126). In its "Notice of Reconsideration," the

Social Security Administration ("SSA") included the following explanation of its decision:

> On your application you stated that you are disabled because of
> Heart disease, triple bypass , five way bypass, diabetes, kidney
> problems, OCD and diabetic neuropathy in legs and feet.
> The medical evidence shows that your condition is not severe
> enough to be considered disabling.
> We do not have sufficient vocational information to determine
> whether you can perform any of your past relevant work. However,
> based on the evidence in file, we have determined that you can adjust
> to other work.
> It has been decided, therefore, that you are not disabled according to
> the Social Security Act. You are able to think, act in your own
> interest, communicate, handle your own affairs, and adjust to
> ordinary emotional stresses without significant difficulties.

(Tr. 126).

Plaintiff filed a timely written request for a hearing on March 26, 2013. (Tr. 19, 130-131).

On December 30, 2014, Administrative Law Judge Ellen Parker Bush (the "ALJ") held a video

hearing from Lawrence, Massachusetts, with Plaintiff appearing from Gastonia, North Carolina.

(Tr. 19, 38-86). In addition, James D. Sarno, a vocational expert ("VE"), and Jimmy Pettus,

Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on March 12, 2015, denying Plaintiff's claim. (Tr.

16-32). On or about May 11, 2015, Plaintiff filed a request for review of the ALJ's decision, which

was denied by the Appeals Council on August 18, 2016. (Tr. 1-3, 10-12). The ALJ decision

became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review

request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this

Court on October 18, 2016. (Document No. 1). On November 1, 2016, the undersigned was

assigned to this case as the referral Magistrate Judge.

2

Plaintiff's "Motion For Summary Judgment" (Document No. 6) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 10) were filed March 3, 2017; "Defendant's Motion For Summary Judgment" (Document No. 13) and "Defendant's Memorandum In Support Of Motion For Summary Judgment" (Document No. 14) were filed July 3, 2017; and "Plaintiff's Response to Defendant's Motion For Summary Judgment" (Document No. 15) was filed July 14, 2017.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 3, 2012, and the date of her decision.[1] (Tr. 19). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1)   whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2)   whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

> impairments that meet the duration requirement in §
> 404.1509 - if no, not disabled;
>
> (3)     whether claimant has an impairment or combination of
>         impairments that meets or medically equals one of the
>         listings in appendix 1, and meets the duration requirement -
>         if yes, disabled;
>
> (4)     whether claimant has the residual functional capacity
>         ("RFC") to perform her/his past relevant work - if yes, not
>         disabled;  and
>
> (5)     whether considering claimant's RFC, age, education, and
>         work experience he/she can make an adjustment to other
>         work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps;  if

claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to

show that work the claimant could perform is available in the national economy.  Pass, 65 F.3d at

1203;  Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016).  In this case, the ALJ determined

at the fourth step that Plaintiff was capable of performing past relevant work as an assembler;  and,

*in the alternative*, the ALJ found that Plaintiff was also capable of performing other jobs existing

in the national economy.  (Tr. 30-32).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity

since August 3, 2012, his alleged disability onset date.  (Tr. 21).  At the second step, the ALJ found

that coronary artery disease, status post bypass graft surgery;  depressive NOS;  anxiety disorder

NOS;  and obsessive compulsive disorder, were severe impairments.[2]  (Tr. 22).  At the third step,

the ALJ determined that Plaintiff did not have an impairment or combination of impairments that

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a
*de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert,
482 U.S. 137 (1987).

5

met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 22-25).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

> he can occasionally climb stairs, ramps, ladders, ropes, and scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can make judgments on simple work. He can respond appropriately to the usual work situations and changes in routine work setting. He can respond appropriately to supervision, the general public, and coworkers, but would do best with only occasional interactions with supervisors, co-workers, and the general public. Lastly, he cannot work in a team and/or in tandem.

(Tr. 25). In making her finding, the ALJ specifically stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff *could* perform his past relevant work as an assembler. (Tr. 30). And, at the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31-32). Specifically, the VE testified that according to the factors given by the ALJ, occupations Plaintiff could perform included a packer sorter and a tagger. (Tr. 32). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 3, 2012, and the date of her decision, March 12, 2015. (Tr. 32).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to make a complete mental RFC assessment; (2) the ALJ failed to explain why limitations contained in medical opinions were not included in the RFC finding; and (3) the ALJ failed to

6

provide legally sufficient reasons for rejecting a treating provider's opinion. (Document No. 7, p.5).

**A.     Mental RFC**

In his first assignment of error, Plaintiff makes three arguments related to the ALJ's alleged failure to properly assess his mental RFC. (Document No. 7, pp.6-13).

First, Plaintiff asserts that the ALJ erred by not accounting for his ability to stay on task. (Document No. 7, pp7-10) (citing Mascio, 780 F.3d 632, 638 (4th Cir. 2015)). Plaintiff contends that "[t]his failure is in direct conflict with the Mascio court's opinion," which Plaintiff observes involved "Mascio's moderate limitation in concentration, persistence, or pace." (Document No. 7, p.9) (quoting Mascio, 780 F.3d at 638). Plaintiff further contends that even if the ALJ found that his mild difficulties did not translate into a functional limitation on his ability to work, the ALJ was still required to affirmatively state such finding somewhere in her decision. Id. (citing Reinhardt v. Colvin, 3:14-CV-488-MOC, 2015 WL 1756480 (W.D.N.C. Apr. 17, 2015)

Second, Plaintiff argues that the ALJ failed to provide a detailed assessment of the effect of his difficulties in social functioning. (Document No. 7, pp.10-11). "There is no discussion in the residual functional capacity determination of how Morrison will respond to supervision, criticism, correction, etc., or get along with coworkers." Id. Plaintiff suggests that a "more detailed assessment" is required, even though the ALJ stated that he was "limited to 'occasional interactions' with supervision, the general public, and coworkers." Id. (quoting Tr. 25).

Third, Plaintiff argues that the ALJ failed to provide an explanation for the effect of his restrictions in activities of daily living on his ability to work. (Document No. 7, pp.12-13). Again, Plaintiff suggests that a "more detailed assessment" is necessary. (Document No. 7, p.12) (citing SSR 96-8p).

Plaintiff concludes that the ALJ's determination as to his mental RFC is insufficient in light of SSR 96-8p and Mascio; "[m]ost importantly, the ALJ's failure to determine Morrison's ability to stay on task in light of his [mild] difficulties maintaining concentration, persistence, or pace." (Document No. 7, p.13).

In response, Defendant asserts that the ALJ adequately accounted for her findings. (Document No. 14, pp.5-10). Defendant notes that in determining the degree of limitation in the functional areas of activities of daily living, social functioning, and concentration, persistence, or pace, the ALJ uses a five-point scale consisting of "none," "mild," "moderate," "marked," and "extreme" limitation. (Document No. 14, p.5) (citing 20 C.F.R. § 404.1520a(c)).

Defendant goes on to argue that the ALJ's RFC assessment and related hypotheticals to the VE adequately accounted for her finding that Plaintiff only had mild limitations in concentration, persistence, or pace ("CPP"). (Document No. 14, p.6). Defendant explains that in Mascio "the Fourth Circuit held that 'an ALJ does not account for a claimant's [moderate] limitations in concentration, persistence, and [*sic*] pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Id. (quoting Mascio, 780 F.3d at 638). Here, Defendant asserts, the ALJ asked the "VE to assume a hypothetical person who, among other things, could maintain a production pace no greater than that maintained by 85% of the person's coworkers." Id. (citing Tr. 82). Defendant contends this case is therefore unlike Mascio because the ALJ accounted for Plaintiff's mild limitations with CPP through the hypotheticals and the VE's testimony that Plaintiff could perform his past relevant work and other work. Id. See also (Tr. 82-83).

Next, Defendant argues that the ALJ adequately addressed Plaintiff's moderate limitations in social functioning with an RFC that provided specific, work-related limitations accounting for Plaintiff's social interaction difficulties: "He can respond appropriately to supervision, the general

8

public, and coworkers, but would do best with only occasional interactions with supervisors, co-workers, and the general public. Lastly, he cannot work in a team and/or in tandem." (Document No. 14, p.9) (quoting Tr. 25). Defendant argues that the "unambiguous limitation to 'occasional interactions'" is sufficient and that courts have consistently affirmed decisions with identical or similar terminology. Id. (citations omitted).

Defendant also argues that the ALJ's assessment of mild limitations in activities of daily living is adequate. (Document No. 14, p.10). Defendant persuasively writes:

> the ALJ's RFC assessment addresses Plaintiff's exertional ability in detail, including his ability to lift and carry weight, sit, stand, and walk, and perform numerous postural maneuvers (Tr. 25). The RFC assessment also addresses Plaintiff's mental ability and his ability to interact socially with others (Tr. 25). Plaintiff fails to identify any work-related activity of daily living that the ALJ did not consider in assessing Plaintiff's RFC, or that would require a greater limitation in functioning than the ALJ included in the RFC assessment. Plaintiff thus fails to show any error on the part of the ALJ.

Id.

In reply to Defendant's motion and memorandum, Plaintiff focuses on Defendant's alleged failure to properly determine whether his limitation in CPP affected his RFC and ability to stay on task. (Document No. 15, pp.1-2). Plaintiff contends that the hypothetical to the VE is not enough. Again quoting Reinhardt, Plaintiff argues that the ALJ had a "duty to explain why such mild mental health limitations impairments found at step two do not translate into work-related limitations." (Document No. 15, p.2). Plaintiff contends that in Mascio the Fourth Circuit "was very clear" only a determination of a person's ability to stay on task accounts for limitations in CPP. Id.

The undersigned finds that Plaintiff's heavy reliance on Mascio and Reinhardt is misplaced here. Even though Plaintiff's counsel has been involved in several other cases in this Court related

to mild limitations in CPP, he has failed to identify, much less distinguish, those cases.[3]  In fact,

Reinhardt appears to be the exception.  The Reinhardt decision was issued about a month after the

Mascio decision, and since then the cases the undersigned has reviewed involving this issue have

held that the requirements of Mascio do not necessarily apply where a plaintiff is found to have

*mild* limitations in CPP.

Particularly instructive here is the decision by the Honorable Max O. Cogburn, Jr. in

Roberson v. Colvin, distinguishing his own decision in Reinhardt.  In Roberson, the plaintiff was

represented by the same counsel as Plaintiff in this case, and similarly argued that the ALJ failed

to give a full function-by-function analysis as required by SSR 96-8 in assessing mental

impairments.  See Roberson v. Colvin, 3:15-CV-570-MOC, (Document No. 12, pp.6-11)

(W.D.N.C. Apr. 11, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)).  In

addressing those arguments Judge Cogburn opined:

> First, this case is distinguishable from Mascio, which dealt with a
> finding of "moderate" limitations, not mild limitations as plaintiff
> suffers here.  Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain
> why Mascio's moderate limitation in concentration, persistence, or
> pace at step three does not translate into a limitation in Mascio's
> residual functional capacity.").  As this case concerns only "mild
> difficulties," it does not trigger the RFC discussion requirements of
> Mascio *per se.*
>
> Second, this case is distinguishable from Reinhardt.  In Reinhardt,
> the "ALJ never returned to any discussion of [the claimant's] mental
> impairments in his RFC findings and therefore omitted any mental
> impairment when creating an RFC."  2015 WL 1756480 at *4.  Such
> is not the case here.  . . .
>
> Third, far from omitting the mental impairment from his discussion
> as in Reinhardt, the ALJ here gave significant weight to Dr. Kirk's

---

[3] Defendant's counsel also failed to address applicable authority distinguishing Reinhardt.  (Document No. 14, pp.5-7).  Remarkably, the parties filed a "Joint Notice" stating that they had conferred "regarding the applicability of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) **and related cases**, to this matter."  (Document No. 12, p.1) (emphasis added).

> evaluation of the plaintiff's RFC and crafted the work limitations consistent with this and other record evidence.

Roberson v. Colvin, 3:15-CV-570-MOC, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016) (denying the plaintiff's motion for summary judgment and affirming the Commissioner).

In another instructive case also involving Plaintiff's counsel, the Honorable Graham C. Mullen issued a final decision just a few weeks before Plaintiff filed his pending motion for summary judgment, affirming a "Memorandum And Recommendation" by the undersigned. See Humphries v. Colvin, 3:15-CV-376-GCM-DCK, 2017 WL 525666 (W.D.N.C. Feb. 8, 2017) affirming 2016 WL 8223429 (W.D.N.C. Oct. 17, 2016). In Humphries, faced with similar arguments to those presented here, the undersigned determined that:

> Contrary to Plaintiff's argument, the undersigned finds that the ALJ's decision includes a more than adequate analysis of Plaintiff's mild, or less than mild, mental limitations. (Tr. 17-21). Moreover, it does not appear that Plaintiff is actually alleging based on contradictory evidence in the record that she has limitations that are not addressed by the RFC; rather, she is simply arguing that her "at most, mild limitations" are cause for remand because the ALJ's decision does not apply the same analysis the Fourth Circuit would require for review of "moderate" limitations in concentration, persistence, or pace. (Document No. 8).

Humphries, 2016 WL 8223429, at *5. See also Thompson v. Colvin, 1:15-CV-234-FDW, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) ("The Court does not read Mascio to impose a duty on ALJs to automatically or necessarily account for mild limitations in the RFC."); Gilbert v. Berryhill, 5:16-CV-100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (quoting Roberson, 2016 WL 5844148, at *6) ("'As this case concerns only "mild difficulties," it does not trigger the RFC discussion requirements of Mascio per se.' . . . The instant case is markedly distinguishable from Mascio, and similar to that of the Roberson plaintiff, who was represented by the Piemonte Law Firm."); Franklin v. Berryhill, 1:16-CV-211-RJC, 2017 WL 4274190, at *2-3

(W.D.N.C. Sept. 26, 2017) ("This Court does not interpret <u>Mascio's</u> holding as applying to all restrictions."); <u>Williamson v. Berryhill</u>, 2017 WL 4293408, at \*5 (E.D.N.C. Sept. 27, 2017) ("the cases are substantially distinguishable and plaintiff's reliance on *Mascio* is inapt."); and <u>Thorp v. Berryhill</u>, 3:16-CV-070-RJC, 2018 WL 325318, at \*3 (W.D.N.C. Jan. 8, 2018) ("this case differs markedly from <u>Mascio</u>. . . . Plaintiff had mild difficulties maintaining concentration, persistence, or pace.").

Like <u>Roberson</u> and <u>Humphries</u>, the undersigned finds that the ALJ here conducted a thorough analysis of Plaintiff's mental impairments and adequately explained the weight she gave the evidence of such impairments, including Plaintiff's limitations related to CPP, social functioning, and activities of daily living. <u>See</u> (Tr. 26-30). Moreover, it appears that the ALJ's findings are supported by substantial evidence. The undersigned notes that the ALJ's findings included the following:

> In terms of the claimant's alleged psychological deficits, the record does not support the extreme limitations alleged. Notably, the claimant testified that his anxiety and depression are controlled with medication, which is supported by his mental health treatment notes.
>
> . . . Nonetheless, he told Dr. Mankinen that he was laid off from work due to economic reasons and denied that he was ever written up on a job or received any oral warnings (Exhibit 6F/3). Despite the claimant's assertions of severe compulsive behaviors, he stated that he went grocery shopping, washed dishes, swept the floor, did the laundry, and made his bed . . . Dr. Mankinen's findings indicate that the claimant's obsessive behaviors are generally subjective since he did observe any unusual behaviors in the claimant during the evaluation.
>
> To his credit, the claimant sought psychological treatment in 2013, when his mental health examinations were generally unremarkable. . . .
>
> The claimant's 2014 treatment notes also do not support his alleged psychological deficits. In fact, the treating records provide more conflicting information. . . . Although it is not the primary basis for

12

the decision in this case, the claimant's failure to follow prescribed treatment that could restore his ability to work without a good reason is a basis for finding the claimant is not disabled (20 CFR 404.1530). . . .

I find that the claimant's longitudinal history does not substantiate his specific allegations. After a review of all the evidence, I conclude that his mental impairments have not jeopardized his psychological functioning to the degree alleged. I also find that his GAF rating, the objective evidence, and his longitudinal treatment history support a limitation to performing unskilled work characterized as simple tasks, involving an ability to respond appropriately to usual work situations and changes in a routine work setting. This evidence further suggests that the claimant would have limited ability to interact with co-workers, supervisors, and with the general public as noted above.

. . . Dr. Gregory opined that the claimant has mild difficulties in daily activities and maintaining concentration, persistence, and pace (Exhibit 1A/7). Dr. Gregory also stated that the claimant's ability to maintain social functioning was only moderately impaired *(Id.)*. Dr. Gregory expressed that the claimant can interact appropriately with others, receive supervisory criticism appropriately, and adjust adequately to changes in the workplace (Exhibit 1All0-11). I agree with this assessment and therefore give great weight to the opinion of Dr. Gregory. Her findings are consistent with the medical record as a whole, as discussed above, . . .

(Tr. 26-30) (citing Tr. 87-99, 101-114, 226-231, 452-457, 469-471, 534-549, 550-566, 567-598).

The undersigned is also satisfied that the ALJ adequately considered Plaintiff's, "at most, mild restrictions of daily living," and, "at most, moderate limitations in his ability to maintain social functioning." See (Tr. 23) (citing 87-99, 101-114, 247-254, 255-262, 324-623, 567-598).

Based on Defendant's arguments, the cited authority above, and the ALJ's thorough consideration of the evidence, the undersigned is not persuaded that the ALJ failed to properly assess Plaintiff's mental RFC.

**B.      RFC Determination**

13

Next, Plaintiff alleges that the ALJ failed to explain why limitations contained in medical opinions were not included in the RFC. (Document No. 7, pp.13-16). Plaintiff contends that the ALJ gave great weight to the opinion of State agency psychological consultant Dr. Bonny Gregory and/or Perry Caviness, M.D. and Eleanor E. Cruise, Ph.D., but there are limitations/restrictions the ALJ did not include in the RFC. (Document No. 7, pp.14-15). For example, Plaintiff notes that the ALJ did not limit him to "simple instructions," or address his ability to accept instructions or respond to criticism from supervisors. Id.

In response, Defendant asserts that the ALJ properly considered the identified medical opinions, which opined that Plaintiff was not disabled and could perform work, and that Plaintiff has failed to show that either doctor's opinion was inconsistent with the ALJ's RFC assessment. (Document No. 14, pp.11-13). Defendant contends that the RFC is consistent with these medical opinions. Id.

The undersigned agrees with Defendant. As noted above, the RFC finds that Plaintiff "can make judgments on simple work . . . respond appropriately to the usual work situations and changes in routine work setting . . . [and] respond appropriately to supervision, the general public, and coworkers." (Tr. 25).

## C.    Medical Provider Opinions

Finally, Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for rejecting a treating provider's opinion. (Document No. 7, pp.16-22). Specifically, Plaintiff criticizes the ALJ for giving little weight to the opinion of Michael Nichols, MFS, LMFT, one of Plaintiff's mental health therapists, and to his mother, Viola Morrison. (Document No. 7, pp.18-22).

In response, Defendant argues that the ALJ provided valid reasons for discounting Mr. Nichols' opinion that are supported by substantial evidence. (Document No. 14, p.13). Mr. Nichols had opined that "returning to the workforce may elevate the claimant's sense of hope, purpose, and usefulness," but, "given the claimant's medical issues," he doubted anyone would hire him. (Tr. 30) (citing Tr. 469). Defendant, however, notes that Mr. Nichols is a licensed marriage and family therapist and as such is not an "acceptable medical source" qualified to offer a medical opinion. Id. Defendant asserts that the ALJ appropriately weighed the Nichols' opinion as explained in her decision:

> I accord the assigned weight to Mr. Nichols' opinion because it is **inconsistent with the medical evidence of record as a whole**. I note that Mr. Nichols had only treated the claimant on four different occasions over a period of two months in 2013 before issuing this opinion (Exhibit 8F/ l). Moreover, **this opinion is inconsistent with the findings of the claimant's other treating mental health sources** that the claimant's GAF rating is from 50 to 55, indicating moderate level symptoms as discussed above (Exhibits 13F/9 and 15F/27). Lastly, as a licensed clinical social worker, **Mr. Nichols is not considered an acceptable medical source and his opinion, standing alone, cannot constitute documentation of severe or disabling functional limitations** (SSR 06-03p).

(Document No. 14, pp.14-15) (quoting Tr. 30) (emphasis added).

As to Plaintiff's mother's testimony, Defendant contends the ALJ did not err. (Document No. 14, p.18). Defendant notes that Plaintiff has not shown or argued that the mother's report is inconsistent with the RFC assessment; and that the ALJ "does not need to evaluate or discuss the testimony if the testimony does not add a new line of evidence for analysis and is discredited . . . ." Id. (citing Culbreath v. Colvin, 5:15-CV-063-RLV-DCK, 2016 WL 6780347, at *5 (W.D.N.C. Nov. 15, 2016)).

The Court observes that the ALJ recognized "Mrs. Morrison's opinion was based on her long-standing familiarity with her son, rather than objective findings and diagnostic testing." (Tr.

30) (citing Tr. 247-254). "This report does not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe. Nonetheless, it was shown that in spite of the claimant's allegations, he is able to perform significant physical and mental tasks." Id.

The undersigned again finds Defendant's arguments persuasive. In sum, this alleged error as well as the Plaintiff's other alleged errors, are insufficient cause for reversal or remand.

## IV. CONCLUSION

The ALJ appears to have conducted a thorough analysis that finds not only that Plaintiff is capable of performing his past relevant work, but also that he could perform other jobs existing in the national economy. (Tr. 30-31). Contrary to Plaintiff's position, the undersigned is satisfied that the ALJ's decision here is supported by substantial evidence and that the Commissioner has applied the correct legal standards. The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 6) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 13) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.    TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: February 8, 2018

David C. Keesler
United States Magistrate Judge